THE FOLLOWING ORDER
IS APPROVED AND ENTERED
AS THE ORDER OF THIS COURT:

DATED: March 04, 2010



_____
Honorable Pamela Pepper
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

---

IN RE:  PAUL DIETENBERGER  Case No. 08-21137-pp
KATHLEEN DIETENBERGER,
  Chapter 7
  Debtors.

---

VIRGINIA E. GEORGE,  Adv. No. 09-2241

  Plaintiff,

v.

TRAVIS BROTHERS CONSTRUCTION, LLC,

  Defendant.

---

**DECISION AND ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT**

---

**Factual Background**

On July 21, 2009, plaintiff Virginia E. George (the Chapter 7 panel trustee assigned to administer the underlying bankruptcy estate of debtors Paul and Kathleen Dietenberger) filed a complaint against the defendant.

1

(Docket no. 1)  The complaint alleged that within 90 days of the date the debtors filed their bankruptcy petition, they transferred $4,000 to the defendant via a check.  The complaint alleged that this transfer was a "preferential transfer," avoidable by the plaintiff under 11 U.S.C. §547(b).  Accordingly, the plaintiff asked the Court to issue a money judgment in her favor in the amount of $4,000, plus costs, attorneys' fees and interest.

The defendant–at that time, represented by counsel–filed an answer to the complaint on August 24, 2009.  (Docket no. 4)  In that answer, the defendant raised two affirmative defenses: that the transfer constituted a "contemporaneous exchange for new value," and that the debtors made the transfer "in the ordinary course of business" with the defendant.

The plaintiff filed the instant motion for summary judgment on January 20, 2010.  (Docket no. 9) The defendant did not file a response; its counsel moved to withdraw on February 12, 2010, citing the defendant's failure to respond to counsel's attempts at communication.  The deadline for objecting to the motion to withdraw was March 2, 2010; the Court did not receive any objections to the motion.

Debtors Paul and Kathleen Dietenberger filed their Chapter 7 bankruptcy petition on February 13, 2008.  Case no. 08-21137-pp (E.D. Wisconsin).  Their bankruptcy papers listed their home address as 2027 Wood Avenue in Oak Creek, Wisconsin.  Schedule I showed that one of the debtors had been employed for 11 years as a network technician at Advanced Healthcare, and

that the other debtor was unemployed. Among the unsecured debts they listed on their Schedule F, the Dietebergers listed a debt to "Travis Brothers Construction" in the amount of $5,482 for "2007 Goods and/or Services."

Along with the motion for summary judgment, the plaintiff's attorney filed an affidavit, to which he attached the defendant's responses to the plaintiff's discovery demands. (Docket no. 9, document #3) One of the items the defendant produced in response to the plaintiff's discovery demands was a copy of an invoice from "Travis Brothers LLC" of Oak Creek, Wisconsin, issued on November 13, 2007 to "home owner." Id., Exhibit A. The invoice listed the customer as "Paul Ditenberger" [sic]. The invoice indicated that Travis Brothers did $9,450 worth of work at a property at 2027 Wood Avenue, including excavating, performing stone work, tiling a drain, doing some grading, and installing post tubes. Id. The invoice indicated that payment was due "Net 30 Days," and listed a payment due date of "12/13/08." The invoice also indicated, in the "Payment/Credit Applied" section, that $4,000 was credited to the outstanding balance, with the handwritten notation "Dec. '07" inserted. This credit appears to have left a balance of $5,450.00 due.

Another of the documents the defendant produced in discovery was a type-written letter, dated December 13, 2007 (the date the payment reflected on the above-described invoice was due), from "Paul Dietenberger" to "Travis Bros. Construction." Id. The "RE:" line of the letter indicated that the letter related to "overdue balance." In the body of the letter, its author stated the

3

following:

> I have bad news and worse news.
>
> The bad news is that I got my final draw check, and at $8000 is not sufficient to pay your bill. The worse news is that due to the construction cost of the house running far over budget (the entire original landscaping and excavation budget was $5000) there are two other contractors who are owed a total of $10,100 and haven't been paid yet. They must be paid from this check too. Therefore, I have calculated a pro-rata distribution of the draw check. Enclosed is your share.
>
> I would appreciate the chance to continue making payments on the remaining balance. I apologize for the inconvenience to everyone. Any questions please let me know.

The defendant also produced a copy of a personal check from the account of Paul and Kathleen Dietenberger, dated December 13, 2007, and made payable to "Travis Bros. Construction." Id. The check number was 3004, and the amount of the check was $4,000.

Finally, the defendant produced another type-written letter, dated December 21, 2007. Id. Again, this letter was from Paul Dietenberger to Travis Brothers Construction. The "RE:" line of this second letter indicated that the letter related to "Outstanding balances." The author of this letter wrote:

> I have received your phone messages of the last several days. As previously noted, the financing provided for my home construction project was insufficient. You have already received a payment of $4,000 toward the unpaid work, which represents your proportional share of the final draw. The property is fully mortgaged and we are not able to obtain further financing to pay remaining balances in full in a short timeframe.
>
> As such, I am offering the following proposal: Enclosed find a check for $400. This would represent the first of 21 equal monthly

4

> payments to pay off the balance owed. The act of depositing or cashing this check will indicate acceptance of the proposal. If the proposal is not accepted please advise as such, and void and return the check.

The defendant's answer to the interrogatories the plaintiff propounded didn't add much to the factual picture provided by the above documents, other than to note that when the defendant did not receive any further payments from the debtors after December 2007, the defendant "voluntarily satisfied the Construction Lien Claim on March 11, 2008, after the Defendant became aware of the fact that the Debtors had filed a Bankruptcy Petition." Id. (The defendant also produced a satisfaction of construction lien dated March 7, 2008. Id.)

So–the picture presented by the documents on file indicates that sometime prior to November 2007, the Dietenbergers decided to do some landscaping and excavation on their home on Wood Avenue in Oak Creek. They budgeted about $5,000 to do this work, and hired several contractors to perform it, including the defendant. The defendant appears to have performed the work sometime before November 13, 2007, and then invoiced the Dietenbergers on that date. The arrangement between the defendant and the Dietenbergers was that the Dietenbergers were to pay the amount they owed–a total of $9,450–within 30 days of the date on the invoice.

The Dietenbergers, however, did not anticipate that the job would cost as much as it did, and the financing they obtained was not sufficient to pay the

5

defendant's invoice and the invoices submitted by the other contractors. Accordingly, on December 13, 2007–approximately 62 days before they filed their Chapter 7 petition–the Dietenbergers sent the defendant a check for $4,000. This represented less than half of the amount the defendant claimed it was owed. The Dietenbergers then tried–apparently unsuccessfully–to work out a payment plan for the remaining balance they owed.

**Jurisdiction**

Because this action is a proceeding to recover a preference pursuant to 11 U.S.C. §547(b), it constitutes a "core proceeding" under Title 11, and therefore this Court has jurisdiction to hear it pursuant to 28 U.S.C. §§157(b)(2)(F) and 1334(a).

**Legal Analysis**

    A.    *Standard Governing Summary Judgment*

Fed. R. Civil P. 56(c) indicates that a court should grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *See also* Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). In order for the non-moving party to defeat a motion for summary judgment, that party must show that there is evidence that would allow a reasonable fact-finder to find in favor of the non-movant by a preponderance of the evidence. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). The Seventh Circuit has held that "the nonmoving

6

party must point to specific facts showing that there is a genuine issue for trial; inferences relying on mere speculation or conjecture will not suffice, *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008)." Trade Finance Partners, LLC v. AAR Corp., 573 F.3d 401, 406-7 (7th Cir. 2009).

    B.    *Elements of an Action to Avoid a Preferential Transfer Under 11 U.S.C. §547(b)*

Section 547(b) of the Bankruptcy Code states that a trustee may avoid "any transfer of an interest of the debtor in property" that is:

- \*     to or for the benefit of a creditor;
- \*     for or on account of an antecedent debt owed by the debtor before such transfer was made;
- \*     made while the debtor was insolvent;
- \*     made on or within 90 days before the date the debtor filed the petition;
- \*     that enables the creditor to receive more than the creditor would receive if the transfer had not been made.

Thus, in order for a trustee to be able to avoid a transfer as "preferential," the trustee must be able to show that the debtor transferred the property (1) to a creditor (2) for an antecedent debt (3) while the debtor was insolvent (4) within 90 days before the debtor filed the petition, and (5) that the transfer enabled the creditor to receive more than it would have received if the debtor had not made the transfer.

    1.    The debtors transferred property to, and for the benefit of, the defendant, which was a creditor of the debtors.

In this case, debtors Paul and Kathleen Dietenberger transferred property–$4,000–to defendant Travis Brothers LLC, one of their creditors. The

7

defendant admits as much in paragraph 4(a) of its answer. Thus, there is no genuine issue of material fact as to the first element of the §547(b) claim.

> 2. The debtors transferred the property for, and on account of, an antecedent debt owed by the debtors before the transfer was made.

In its answer, the defendant denied this allegation of the complaint. (Answer, paragraph 4(b))

The Bankruptcy Code does not define the term "antecedent debt." *See* U.S. v. Pullman Constr. Indus., Inc., 210 B.R. 302, 306 (N.D. Ill. 1997). Courts, however, have construed the phrase to mean "a claim that existed against the debtor at the time the claim was paid, even if the claim was unliquidated, unfixed or contingent." Id., citing *In re Energy Co-op., Inc.*, 832 F.2d 997, 1001 (7th Cir. 1987); *In re Brown Family Farms, Inc.*, 80 B.R. 404 (Bankr. N.D. Ohio 1987), *aff'd* 872 F.2d 139 (6th Cir. 1989). *See also*, Warsco v. Preferred Technical Group, 258 F.3d 557, 569 (7th Cir. 2001) ("antecedent debt exists, for preference avoidance purposes, when a creditor has a claim against the debtor, even if the claim is unliquidated, unfixed, or contingent") (citation omitted). The Bankruptcy Code defines a "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. §101(5)(A).

If, therefore, the defendant had a right to payment from the debtors that existed on the date the debtors transferred the $4,000 to the defendant, then

8

the debtors owed the defendant an "antecedent debt." The documents the defendant produced demonstrate quite clearly that as of December 13, 2007, the defendant had a right to payment from the debtors for the work the defendant had done on their home–a debt which the debtors had not yet paid.

Further, it is clear that the $4,000 that the debtors transferred to the defendant was "for" and "on account of" that antecedent debt. Mr. Dietenberger said so in his letters. The defendant appears to have agreed, because the handwritten note on invoice indicates that the defendant applied the $4,000 to that antecedent debt.

Thus, in spite of the fact that the defendant denied it in its answer, there is no genuine issue of material fact as to the second element of the plaintiff's §547(b) claim.

>            3.    The debtors transferred the property while they were
>                  insolvent.

Section 547(f) of the Bankruptcy Code states that for the purposes of determining whether a transfer is avoidable, "the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition." Fed. R. Evid. 301 indicates that a presumption "imposes on the party against who it is directed the burden of going forward with evidence to rebut or meet the presumption." Thus, in order to defeat the presumption that the debtors were insolvent when they transferred the $4,000 on December 13, 2007, the defendant needed to produce some evidence that

9

they were not.

The defendant did not file a response to the plaintiff's motion for summary judgment. In its answer to the complaint, it indicated that it did not have sufficient information to form a belief as to whether the debtors were insolvent at the time of the transfer. (Answer at paragraph 4(c)) The evidence that the defendant produced in discovery, however, supports the conclusion that the debtors were insolvent at the time they sent the defendant the $4,000 check. Mr. Dietenberger's letters both indicate that the debtors did not have the funds to pay the debts they owed. The debtors filed for Chapter 7 protection two months after transferring the $4,000 to the defendant. There simply is no evidence in the record to rebut the presumption that the debtors were insolvent on December 13, 2007.

Thus, there is no genuine issue of material fact as to the third element of the plaintiff's §547(b) claim.

> 4. The debtors transferred the property within 90 days of filing their Chapter 7 petition.

In paragraph 11 of the complaint, the plaintiff alleged that the transfer occurred "within 90 days of the Petition Date." The defendant denied that allegation in its answer. (Answer, paragraph 3) It is difficult to find a basis for the defendant's denial. The debtors transferred the $4,000 on December 13, 2007. They filed their Chapter 7 petition on February 13, 2008, some 62 days after they transferred the funds. Sixty-two days is less than 90 days.

10

Thus, there is no genuine issue of material fact regarding the fourth element of the plaintiff's §547(b) claim.

>    5.   The transfer enabled the defendant to receive more than it would have had the debtors not made the transfer.

According to the invoice the defendant produced, it performed $9,450 worth of work for the debtors. It received, as a result of the transfer, $4,000 against that amount–some 44% of its total claim.

On their Schedule E, the debtors listed $5,709 in secured debt. The defendant was not listed among the secured creditors. On their Schedule F, the debtors listed $81,475.28 in unsecured debt (including the balance they indicated was due on the defendant's claim). As of the claims bar date, unsecured creditors had filed a total of $61,902.46 in claims.[1] The only avoidance action the trustee has filed in the debtors case is the instant action, which seeks to recover $4,000 plus fees and costs. If the trustee recovers that amount, she will have $4,000 with which to pay $61,902.46 in unsecured claims, meaning that each creditor will receive around $.06 on the dollar.

Had the debtors not transferred the $4,000 to the defendant, its entire claim–$9,450–would have been included in the debtors' unsecured debt. This would have raised the total amount of unsecured debt to $86,925.28. Perhaps in that instance, the defendant would have filed a proof of claim, increasing the

---

[1] The defendant did not file a proof of claim, likely due to the fact that it received the transfer.

total amount of the claims filed to $71,352.46. The trustee presumably would not have brought any avoidance actions in this hypothetical scenario, which would have resulted in the unsecured creditors–including the defendant–receiving no distribution.

Clearly, then, the debtors' $4,000 transfer to the defendant enabled the defendant to obtain much more than it would have had the transfer not taken place.

This conclusion comports with what the Seventh Circuit has said about the fifth element of a preference avoidance action. In Matter of Prescott, 805 F.2d, 719, 726 (7th Cir. 1986), the Seventh Circuit explained that

> [i]n order to meet [the] burden [of proving that the transfer enabled the creditor to receive more than it would have had the transfer not taken place], the trustee generally must establish that the preferred party's claim is not fully secured. The payment of a secured claim ordinarily does not allow a creditor to receive more than it would receive in a Chapter 7 distribution. See *In re Santoro Excavating, Inc.*, 32 B.R. 947 (Bankr. S.D.N.Y.1983); *In re Hale,* 15 B.R. 565, 567 (Bankr. S.D. Ohio 1981). By contrast, an unsecured claim is by definition one held by a party in the class of general creditors; it is subject to rules of priority and entitled to distribution only pro rata with other general claims. A payment to a creditor with an unsecured claim, therefore, may well favor that party over other general claimholders.

The defendant's claim was not secured. As a general, unsecured, non-priority creditor, it should have received a *pro rata* share of the total assets available for distribution to unsecured creditors. The December 13, 2007 transfer "favored" the defendant over the other unsecured creditors, and enabled it to receive more than it would have had it not received the transfer.

12

Thus, there is no genuine issue of material fact as to the fifth element of the plaintiff's §547(b) action.

  C. *<u>Affirmative Defenses Raised by the Defendant</u>*

The defendant raised two affirmative defenses in its answer. First, it argued that the December 13, 2007 transfer constituted a "contemporaneous exchange of new value to the debtors." Second, it argued that the December 13, 2007 transfer "was made in the ordinary course of business with the Defendant." Again, the defendant did not file a response to the motion for summary judgment, and all the Court has before it to assist it in determining the validity of these affirmative defenses is the information the defendant provided in response to the plaintiff's discovery demands. That information, however, does not support either of the proffered affirmative defenses.

13

Case 09-02241-pp    Doc 18    Filed 03/04/10    Page 13 of 19

1. There is no evidence that the parties intended the transfer to be a "contemporaneous exchange for new value given" to the debtors.

Section 547(c) of the Code prohibits a trustee from avoiding a transfer to the extent that the transfer was "intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor." The Code defines "new value" as

> money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation.

11 U.S.C. §547(a)(2).

The Seventh Circuit has said that "[t]he contemporaneous exchange exception exists to protect 'transfer[s] that [are] not really on account of an antecedent debt." Energy Coop., Inc. V. SOCAP Int'l, Ltd., 832 F.2d 997, 1003 (7th Cir. 1987), citing House Report at 373, 1978 U.S. Code Cong. & Ad. News at 6329. In the Energy Coop case, the court held that a debtor who paid a creditor to settle a breach of contract claim that arose "more than a month" before the transfer had effected an avoidable transfer, because the payment clearly was on account of an antecedent debt. Id.

This Court draws the same conclusion here. All of the information the defendant provided in response to the plaintiff's discovery demands supports the conclusion that $4,000 the debtors paid on December 13, 2007 was on

14

account of a debt they owed the defendant from work the defendant had done well before the December 13, 2007 date. There is no evidence in the record that demonstrates that the defendant intended to, or did, provide any "new value" to the debtors on or around December 13, 2007, or at any time thereafter. The debtors gave the defendant $4,000 for one reason and one reason only–to pay down the debt they had incurred a month or more before for work the defendant had done landscaping their home.

The evidence the defendant produced indicates that the debtors, at any rate, intended the $4,000 payment to apply to an antecedent debt. Mr. Dietenberger made reference in both of his letters to the fact that the $4,000 was for "overdue balance" or "outstanding debt." Clearly he intended the $4,000 to be applied to an antecedent debt. The letters contain no indication that he somehow intended to obtain some new value in exchange for the $4,000.

Thus, the Court finds that there is no genuine issue of material fact regarding whether the parties intended the $4,000 payment to constitute a contemporaneous exchange of value for new debt.

> 2. There is no evidence demonstrating that the transfer was made as part of the ordinary course of business between the debtors and the defendant.

Section 547(c)(2) prohibits a trustee from avoiding a transfer to the extent that the transfer was "in payment of a debt incurred by the debtor in the ordinary course of business . . . of the debtor and the transferee," where the

15

transfer was "made in the ordinary course of business . . . of the debtor and the transferee," or was "made according to ordinary business terms."  The "ordinary course" exception "was designed 'to leave undisturbed normal commercial and financial relationships and protect recurring, customary credit transactions which are incurred and paid in the ordinary course of business of both the debtor and the debtor's transferree.'" Kleven v. Household Bank F.S.B., 334 F.3d 638, 642 (7th Cir. 2003), *cert. denied*, 540 U.S. 1073 (2003).  The Seventh Circuit has pointed to several factors a court may consider in determining whether a transfer was made in the "ordinary course" of business between the debtor and the transferee:

(1) the length of time the parties were engaged in the transaction at issue;

(2) whether the amount or form of tender differed from past practices;

(3) whether the debtor or creditor engaged in any unusual collection or payment activity; and

(4) whether the creditor took advantage of the debtor's deteriorating financial condition.

Id., citing Barber v. Golden Seed Co., Inc., 129 F.3d 382, 390 (7th Cir. 1997).  This list, the court said, is not exhaustive.  Id.  The court also noted that "[a]lthough a history of dealing between parties is certainly the strongest factor supporting a determination that the business between a debtor and an alleged preference creditor is ordinary, we do not believe it is absolutely necessary in every case."  Id.

16

In the case at bar, there is no evidence regarding whether the debtors had a history of business dealings with the defendant prior to retaining the defendant to landscape their home. It may be that this was the first time the debtors and the defendant had done business with each other. As the <u>Kleven</u> court indicated, however, that in itself is not dispositive of the question of whether the transfer was in the "ordinary course" of the debtors' business with the defendant.

The record does contain evidence indicating that the $4,000 transfer was not in the "ordinary course" of business between these parties. The invoice the defendant produced indicated that the defendant's ordinary business procedure was to demand net payment, in full, within 30 days of the date on the invoice. That did not occur in the debtors' case. The debtors did make a payment, and they appear to have made it within 30 days of the date on the invoice. But they did not pay the full amount of the invoice. Instead, as Mr. Dietenberger explained in his first letter, because he did not have enough money to pay all of the creditors in full, he calculated each creditor's "pro rata" share of the money he did have, and paid each creditor that share. It is unlikely that such a procedure was the defendant's "ordinary course," as evidenced by the fact that it called the debtors shortly after the transfer, demanding the balance of the debt. This led to Mr. Dietenberger's second letter, offering to pay the balance of the debt in 21 installments–again, a procedure that does not appear to have been contemplated in the defendant's

17

"Net 30 Days" "ordinary course" procedure.

There is no evidence before the Court to indicate that it was the defendant's "ordinary course" to let a customer calculate a "pro rata" portion of the total balance due and pay that, and then pay the remainder in installments over time. Further, given that it appears that the debtors' business dealings with the defendant came to an end upon completion of the landscaping, there was no "recurring, customary credit transaction" to be protected by the defendant's invocation of the "ordinary course" defense.

Thus, the Court finds that there is no genuine issue of material fact regarding whether the $4,000 transfer was made in the "ordinary course of business" between the debtors and the defendant.

## **Conclusion**

For all of the reasons discussed above, therefore, the Court concludes that there are no genuine issues of material fact to be tried in this adversary proceeding. The Court further concludes that the plaintiff is entitled to judgment as a matter of law, because the $4,000 transfer that took place on or about December 13, 2007 between the debtors and the defendant constituted an avoidable, preferential transfer under 11 U.S.C. §547(b).

WHEREFORE, the Court **GRANTS** the plaintiff's motion for summary judgment. The Court further **ORDERS** that judgment issue in favor of the plaintiff in the amount of $4,000. The Court further **ORDERS** that, in addition to paying to the plaintiff the $4,000 preferential transfer amount, the defendant

is to pay to the plaintiff all reasonable costs, fees and applicable interest, including attorneys' fees.

The Court further **ORDERS** that within thirty (30) days of the date of this decision and order, the plaintiff (1) file with the Court an itemized statement of costs, fees and interest, and (2) provide the Court with a proposed order of judgment. The Court will execute and enter the order upon submission.

# # # # #

19

Case 09-02241-pp    Doc 18    Filed 03/04/10    Page 19 of 19